·CASE No. 1166.

HAMMOND v. PORT ROYAL AND AUGUSTA RAILWAY
COMPANY.

1. Plaintiff conveyed in fee-simple to a railroad company for its road-bed a
strip of land through his plantation, by a deed-poll, which contained the
express condition, subsequent, "that the system of drainage shall remain
the same as now, and ditches to remain of such a depth as to allow,·as
heretofore, the drainage of the land to the depth of five feet." This condi-
tion was violated by the grantees, and afterwards the railroad was purchased
by a new company. *Held*, that the terms of the deed did not create a
covenant running with the land, and there being no personal covenant by
the present owners they were not liable to plaintiff in damages for their
mere failure to remove obstructions which had been placed in the ditches
by the former company.

2. To render the defendants liable it must be shown that the plaintiff's sys-
tem of drainage had been affected by obstructions caused by defendants, or
by them increased.

3. Plaintiff is not confined to an action to enforce a forfeiture under his deed
for condition broken, as the corporations, independently of covenant, are
liable for damages done by them to plaintiff's system of drainage; but the
defendants' duty was passive—their only obligation was not to obstruct the
drainage and to permit plaintiff to keep it up—and, therefore, the Circuit
judge erred in charging the jury that the defendants were liable for
damages, resulting from their failure to remove the obstructions caused by
the acts of the former owners, and to restore the system of drainage as it
existed when the deed was executed.          *

Before KERSHAW, J., Aiken, September, 1881.

Action by Paul F. Hammond against the Port Royal and
Augusta Railway Company.

To the statement made in the opinion it will be necessary only
to add the precise language which raised the points considered
by this court.

The motion for non-suit was based, in part, substantially upon
the positions taken in the following requests to charge :

1. That the deed of Paul F. Hammond to the Port Royal

Railroad Company, was a conveyance upon condition, without any covenant by the grantee to observe or perform the condition, and did not impose upon the defendant, as assignee of the Port Royal Railroad Company, the duty of preserving intact the plaintiff's system of drainage, or of keeping the ditches to such a depth as to allow the drainage of the plaintiff's land to the depth of five feet, and that the only remedy of the grantor for breach of condition, is to enforce a forfeiture of the estate.

2. That the defendants cannot be made responsible for any injury except that occasioned by their own acts of commission or omission, and that the plaintiff is not, therefore, entitled to recover such a sum as would restore the ditches on plaintiff's land to the condition they were in on May 22d, 1872, but only such a sum as would be necessary to restore the ditches to the condition they were in on October 1st, 1878.

3. If the jury find from the testimony that the obstructions to the drainage were put there by the Port Royal Railroad Company prior to October 1st, 1878, no action would lie against the defendants for continuing the nuisance until they had been requested to remove the obstructions and had refused or neglected to do so.

The judge declined to charge in this form. He did charge, " that in order for the plaintiff to recover you must find that the system of drainage on the Cathwood plantation, which existed May 22d, 1872, was obstructed by the Port Royal Railroad Company (the first corporation), and that such obstructions were continued by the present defendant company, after they acquired the property and franchise of the said railroad company and after they were requested by the plaintiff to remove them. Such request may be either in express words or implied from the conduct of the parties." His Honor further instructed the jury: " If the present defendant company did acquire the title and possession under the grantees, under the said deed from the plaintiff, dated May 22d, 1872, they are bound to perform all the conditions set forth in that deed in relation to the system of drainage of the Cathwood plantation, and are responsible for any injury done to the plaintiff attributable to their failure to perform such duty upon the request or demand of the plaintiff, which request or demand may be either in express words or by impli-

cation from the circumstances or conduct of the parties. It was incumbent under that deed upon the grantees and their assigns holding the land therein conveyed to them to maintain the system of drainage as it then existed on the Cathwood plantation, so far as it depended upon the transmission of the water across the land therein conveyed to them. In their use of the land they were to take care that this was not impeded, but that the drainage was to be preserved in such a condition that the ditches should remain of such a depth as to allow, as theretofore, the drainage of the land on the Cathwood place to the depth of five feet at all times."

The exceptions, following the language of the charge and requests to charge, allege error on the part of the judge in these particulars.

*Messrs. William Elliott, Lord & Inglesby,* and *James Aldrich,* for appellants.

It is conceded that the grantees would have taken this land burdened with the duty of so constructing their road as not to interfere with Hammond's drainage, if the deed had been silent upon this subject. 5 *Rich.* 415. But the duty which this easement imposed was entirely passive. *Washb. Easm.* *564–9 ; 12 *Mass.* 65 ; 30 *Me.* 100. It is clear then that neither the grantee nor its assignee are liable except for obstructing the drainage, unless the deed makes them so. But this deed did not create a covenant running with the land. 15 *S. C.* 33. The condition here is not a covenant, and the grantor's only remedy for condition broken is to enforce the forfeiture. 11 *N. Y.* 387. It, therefore, follows, that there was here an implied reservation to the grantor of a right to maintain his system of drainage, with a condition which enabled him to enforce a forfeiture if his easement was obstructed ; that it was the grantor's duty to maintain his system on his own land and on the railroad land, and the grantees and their assignees must refrain from doing any act which would prevent him.

The nuisance here was not created by defendants, but merely continued as they found it, and, therefore, the plaintiff must

allege and prove notice to the defendants of the existence of the nuisance, the extent of it, and a request to abate or remove it before action could be brought. 5 *Rep.* 100 ; *Willes* 583 ; 2 *Chit. Pl.* 333, note (c.) ; 13 *Conn.* 303 ; 44 *Me.* 154 ; 9 *N. H.* 88 ; 8 *Bush* 404 ; 3 *Allen* 267 ; 98 *Mass.* 43 ; 13 *N. J.* 36 ; 11 *Minn.* 20 ; 5 *Rich.* 420. As there were no facts in this case from which a request or demand might be implied " from the circumstances or conduct of the parties," the charge was erroneous and calculated to mislead the jury. Instructions not relevant to the facts of a case constitute error in the charge. *Thomp. Char. Jur.* 92, 93.

*Messrs. Henderson Bros.* and *Youmans,* attorney-general, contra.

The grantees of the original creators of the disturbance are liable for a continuance. *Gale Easm.* *404. By accepting the deed the railroad company rendered itself liable for the non-performance of the burdens imposed. *Pierce Railr. L.* 135 ; 64 *Geo.* 492. The condition created an easement by covenant. 8 *Paige* 402 ; 11 *Ib.* 414 ; 11 *N. Y.* 389. An easement may be granted by what is in terms an exception or reservation, and whether a perpetual interest or not depends upon whether appurtenant to the land or an easement in gross for the owner. 6 *Cush.* 132. See, too, 21 *N. Y.* 507 ; 21 *Ohio St.* 235.

March 14th, 1882. The opinion of the court was delivered by

McIVER, A. J. On May 22d, 1872, the plaintiff executed a deed to the Port Royal Railroad Company for a strip of land two hundred feet wide and about one mile and a half in length, running through a tract of land known as the Cathwood plantation. The estate conveyed by this deed was upon certain conditions, the only one with which we are at present concerned being expressed in the following language: "To have and to hold the said strip of land   *   *   *   unto the said party of the second part, their successors and assigns, forever : *provided* always, and this deed is upon the express conditions.   *   *   *

2. That the system of drainage shall remain the same as now, except that such ditches as have been filled up by the party of the second part are to be re-opened by them, and ditches to remain of such a depth as to allow, as heretofore, the drainage of the land to the depth of five feet." This deed, though characterized in the recital as an indenture, was signed only by the plaintiff, and must be regarded as a deed-poll.

All the property of the Port Royal Railroad Company was sold and the defendant company became the purchaser and went into possession in October, 1878, the deed being dated the third of that month, though the sale was not confirmed until May 23d, 1879. On June 23d, 1879, this action was commenced, in which the plaintiff alleged two causes of action. Under the first the plaintiff sought to recover possession of the strip of land above mentioned upon the ground that the conditions upon which the land was conveyed had been broken and that thereby the estate of the grantee was forfeited. The second cause of action was alleged in the following words: " That said defendants having wrongfully taken possession of said tract of land aforesaid, have continued the construction and running of a railroad through the same, and because of the negligent construction of said road-bed, the culverts, trestles and mud-sills, so continued negligently and unlawfully, said defendants have damaged and almost completely destroyed the system of drainage which existed on the plantation of Cathwood aforesaid, by closing up and obstructing the ditches and canals which supported said system, thus causing to the plaintiff the loss of his crops and great deterioration in the value of his land, to the damage of the plaintiff eight thousand dollars."

The defendant demurred to so much of the complaint as set out the second cause of action upon the ground that the facts therein stated were not sufficient to constitute a cause of action. This demurrer was overruled and the case went to trial before a jury, who rendered a verdict in favor of the plaintiff for the land and for a large amount as damages. Upon appeal, this court held (15 *S. C.* 10) that the above-mentioned deed did create an estate upon condition, but as it was conceded that there had been no such entry or claim by the plaintiff before this action was commenced as would revest the plaintiff with the title, that the

action to recover possession of the land could not be maintained. It was also held, that the demurrer was properly overruled, but a new trial was ordered on the second cause of action because the Circuit judge refused to charge as requested by the defendant— "that the jury could not find damages for anything done prior to the possession of the defendant"—this court holding that the charge as given to the jury was calculated to mislead them as to this point.

When the case came on for a new trial, the defendant, at the close of the testimony adduced by the plaintiff, moved for a non-suit upon various grounds, which motion being refused, the case went to the jury, the defendant declining to offer any evidence, and a verdict for eight thousand dollars was rendered in favor of the plaintiff. The defendant now renews the motion for a non-suit here, and appeals on the ground that the Circuit judge refused to charge any of the several propositions as submitted by the defendant, and upon exceptions to various propositions of law charged by the judge. Under the view which we take of the case, it will not be necessary to consider the several grounds of appeal *seriatim*.

The complaint in setting out the second cause of action substantially alleges that the defendant by continuing the construction and running of a railroad through the said strip of land had damaged and almost completely destroyed the system of drainage which previously existed on Cathwood plantation by closing up and obstructing the ditches and canals which constituted a part of such system. If these allegations were true, then the plaintiff had a good cause of action, for they practically amounted to an allegation that the defendant had obstructed the drainage of plaintiff's land by closing up certain ditches necessary to secure that end. Hence, the demurrer to that portion of the complaint which set out the second cause of action was properly overruled, because such demurrer admitted the truth of the facts as alleged in the complaint, and if those allegations were true, then the plaintiff did have a cause of action.

It seems to us that the fundamental inquiry in this case is whether the present defendant was under any obligation to remove the obstructions which had been placed in the ditches

across the said strip of land by the former company, and, if not, whether the present defendant had done any act tending to increase the obstructions placed in said ditches by the former company or to prevent the plaintiff from removing the same.

The defendant bought the strip of land subject to the right of the plaintiff to drain Cathwood plantation through the ditches across said strip, and must hold it subject to that easement.  But this would not impose any obligation upon the defendant to remove any obstructions which may have been placed in said ditches by · another, unless there was some personal covenant or some covenant running with the land binding the defendant to keep said ditches open and free from obstructions.  There is no pretense that there was any such personal covenant on the part of the defendant, and the only inquiry, therefore, is whether the terms of the deed from the plaintiff to the former company created such a covenant running with the land as would bind the defendant to keep the ditches open and free from obstructions, to the depth necessary to maintain the system of drainage originally established by the plaintiff.  This court has already decided that said deed created an estate upon condition ; and although there are cases in which a deed has been held to contain both a condition and a covenant, yet in those cases it will be found that there are words, either expressly or by necessary implication, creating a covenant and that the deed is in the form of an indenture and not a deed-poll.  See the former decision in this case (15 *S. C.* 10),·and also the recent decision of the Supreme Court of the United States, rendered at October Term, 1881, in the case of *Hale* v. *Finch,* 104 *U. S.* 261.

Here, the deed contains no words expressly creating a covenant, and there are none ·which necessarily imply one.  The words relied on are contained in a deed-poll and not in an indenture, and there is nothing to bind the grantee to the performance of any covenant.  We do not mean to say that in no case can a covenant binding the grantee be created by a deed-poll, but only mention the form of the deed as one of the circumstances going to negative the idea that the intention was to create a covenant in this case.  As was very pertinently said by the Chief Justice in delivering the former opinion in this case : " If Hammond had

intended to rely for his protection upon a covenant by the grantee, would he not have taken a separate instrument properly prepared and executed? The fact that he did not do this affords a strong presumption that he preferred the right to enforce forfeiture as the most effectual means of protection."

It follows from this that the mere failure of the defendant to remove the obstructions which had been placed in the ditches by the former company affords no cause of action against the present company. The plaintiff must go further and show that by some act of the defendant the plaintiff's system of drainage has been obstructed, or that the obstructions caused by the former company have been increased.

We do not think that the plaintiff's *only* remedy was to enforce a forfeiture of the estate, for even in the absence of any covenant binding the defendant to keep the ditches open through the said strip of land, the defendant might under this action be made liable for any damages resulting from any act of the defendant which tended to injure the plaintiff's system of drainage, or impair its efficiency. The jury should, therefore, have been instructed to inquire whether the defendant had in any way obstructed the drainage or increased the obstructions caused by the acts of the former company, and, if so, to give such damages as resulted from such acts of the defendant. But we think that the Circuit judge was in error in saying to the jury, in effect, that the defendant was liable for any damages caused by the failure to remove the obstructions caused by the acts of the former company and " to restore the system of drainage as it existed on May 22d, 1872." The duty of defendant was simply passive, not active, and its only obligation was not to obstruct the system of drainage originally established by the plaintiff, and to permit the plaintiff to keep up that system.

Under this view of the case the other questions suggested by the grounds of appeal cannot properly arise, and need not, therefore, be considered.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.

SIMPSON, C. J., and McGOWAN, A. J., concurred.